UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARGARET ADAMSKI-THORPE, <br><br> Plaintiff, <br><br> v. <br><br> STEVENS MEMORIAL HOSPITAL, <br><br> Defendant. | CASE NO. C09-1302 <br><br> ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTIONS FOR RELIEF FROM DEADLINE AND TO AMEND THE COMPLAINT |

## I.   INTRODUCTION

These matters come before the court on Defendant Stevens Memorial Hospital's ("Stevens Hospital") motion for summary judgment (Dkt. # 8), and Plaintiff Margaret Adamski-Thorpe's motion to amend her complaint and for relief from a deadline (Dkt. ## 23 & 25 respectively). Having reviewed all three motions, as well as all submissions made in support or in opposition to the motions, the court DENIES Stevens Hospital's

ORDER- 1

motion for summary judgment (Dkt. # 8), and GRANTS Ms. Adamski-Thorpe's motions to amend (Dkt. #23) and for relief from deadline (Dkt. # 25).[1]

## II.   BACKGROUND

Ms. Adamski-Thorpe is deaf.  (Compl. (Dkt. # 1) at ¶ 2.)  On September 17, 2007, counsel for Ms. Adamski-Thorpe wrote a letter to Mr. Fred P. Langer, President of Stevens Healthcare Board of Commissioners, describing an incident on June 8, 2007, in which Ms. Adamski-Thorpe spent several hours in Steven Hospital's emergency room without the assistance of an American Sign Language interpreter.  (Second Davis Decl. (Dkt. # 29) Ex. A.)  Ms. Adamski-Thorpe also wrote a letter to Mr. Richard Channing, the Chief Financial Officer of Stevens Hospital, dated November 25, 2008, describing another experience on January 4, 2008 when she received a mammography in the absence of an American Sign Language interpreter.  (Second Adamski-Thorpe Decl. (Dkt. # 30) Ex. A.)

On September 14, 2009, Ms. Adamski-Thorpe filed a complaint against Stevens Hospital for damages, as well as injunctive and declaratory relief, based on violations of (1) the Washington State Law Against Discrimination ("WLAD"), RCW 49.60.215, (2) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, as well as 28 C.F.R. §§ 35.130 and 35.160, and (3) the Rehabilitation Act ("RA"), 29 U.S.C. § 794.  (Compl. at 3-5.)  In her complaint, Ms. Adamski-Thorpe alleges that she uses American Sign

---

[1] Neither party has requested oral argument with regard to any of the motions at issue.  The court finds that all of the motions are appropriate for decision without oral argument.

1  Language as her primary means of communication. (*Id.* at ¶ 2.) She further alleges that
2  when she arrived for an appointment with her physician on January 4, 2008, Stevens
3  Hospital failed to provide her with a sign language interpreter despite her prior request
4  that such an interpreter be present for her appointment. (*Id.* at ¶¶ 4-6.) Ms. Adamski-
5  Thorpe alleges that due to the lack of an interpreter, she was unable to discuss the results
6  of medical tests with her doctor. (*Id.* at ¶ 8.) She also alleges that Stevens Hospital failed
7  to provide an American Sign Language interpreter for her on June 7, 2008 when she
8  spent 6 hours in the emergency room, as well as on January 18, 2009, for an appointment
9  with her primary care physician. (*Id.* at ¶¶ 9-10.)

10      Ms. Adamski-Thorpe apparently filed her complaint with some typographical
11  errors. Although her visit to the emergency room at Stevens Hospital occurred on June 8,
12  2007 (as indicated in the above referenced letter from her counsel to the President of
13  Stevens Healthcare Board of Commissioners), she nevertheless stated in her complaint
14  that the visit had occurred on June 7, 2008. (*Id.* at ¶ 9.) In addition, the appointment that
15  Ms. Adamski-Thorpe alleges occurred with her physician on January 18, 2009, may have
16  actually occurred on January 19, 2009. (Brunson Decl. (Dkt. # 10) at ¶ 4.) Finally, Ms.
17  Adamski-Thorpe's complaint does not explain that the "appointment with her physician"
18  on January 4, 2008 was actually an appointment for a mammography. (*See* Compl. at ¶¶
19  4-6; Adamski-Thorpe Decl. Ex. A.)

20      On August 26, 2010, Stevens Hospital filed a motion for summary judgment
21  asserting that there was no evidence that Ms. Adamski-Thorpe had been seen by her
22  physician on January 4, 2008 or in the emergency room on June 7, 2008. (Mot. at 2-3, 5-

ORDER- 3

6.) Stevens Hospital acknowledged that, although it had no record that Ms. Adamski-Thorpe had been seen by her physician on January 18, 2009, she had been seen by her physician on January 19, 2009. (*Id.* at 4.) Stevens Hospital nevertheless asserted that summary judgment was appropriate with regard to this visit as well because Ms. Adamski-Thorpe failed to produce evidence sufficient to support her claims of discrimination. (*Id.* at 6-13.)

On October 7, 2010, following Stevens Hospital's motion for summary judgment, Ms. Adamski-Thorpe filed a motion to amend her complaint to correct the typographical errors (Dkt. # 23). On October 12, 2010 she filed a motion for relief from the September 16, 2010 deadline set forth in the case schedule for filing amended pleadings (Dkt. # 25).

### III. DISCUSSION

**A.  Stevens Hospital's Motion for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] The plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential

---

[2] Federal Rule Civil Procedure 56 was amended effective December 1, 2010. The relevant text of the prior rule stated that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2) (effective prior to December 1, 2010). The minor change in language between the old Rule 56(c)(2) and the revised Rule 56(a) that occurred during the pendency of this motion, has no effect on the court's ruling here.

to that party's case, and on which that party will bear the burden proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A plaintiff bringing a suit under the RA must show (1) she is an individual with a disability, (2) she is otherwise qualified to receive the benefit, (3) she was denied the benefits of the program solely by reason of her disability, and (4) the program receives federal financial assistance. *Duvall v. County of Kitsap,* 260 F.3d 1124, 1135 (9th Cir. 2001).

To make a prima facia case of discrimination under the ADA, Ms. Adamski-Thorpe must demonstrate that: (1) she is an individual with a disability recognized under the statute, (2) she was either excluded from participation in or denied benefits of a public entity's services, programs, or activities, or otherwise discriminated against by the public entity, and (3) such exclusion, denial of benefits, or discrimination was by reason of her disability. *See Duvall,* 260 F.3d at 1135 (citing *Weinreich v. Los Angeles Cnty. Metro. Trans. Auth.,* 114 F.3d 976, 978 (9th Cir. 1997)).

Similarly, the elements of a prima facie claim for discrimination in a place of public accommodation under the WLAD are (1) the plaintiff has a disability recognized under the statute, (2) the defendant's establishment is a place of public accommodation, (3) the plaintiff was discriminated against by receiving treatment that was not comparable to the services provided to nondisabled persons by or at the place of public accommodation, and (4) the disability was a substantial factor causing the discrimination. *Fell v. Spokane Transit Auth.*, 911 P.2d 1319, 1328 (Wash. 1996).

The standards used to determine whether an act of discrimination violates the RA are the same standards that apply under the ADA. *Coons v. Sec'y of the U.S. Dep't of the Treasury,* 383 F.3d 879, 884 (9th Cir. 2004). Further, the ADA is analogous to the WLAD in that both make it an unlawful practice for a public entity to discriminate against an individual with respect to his or her disabilty. *Abernathy v. Valley Medical Center,* No. C06-001 MJP, 2006 WL 1515600 at * 2 (W.D. Wash. May 25, 2006). Because the elements of Ms. Adamski-Thorpe's ADA, RA, and WLAD claims are similar and overlapping, when appropriate, the court addresses the claims together. *See e.g. Duvall,* 260 F.3d at 1135-36 ("Because the elements of [Plaintiff's] ADA, [RA], and WLAD claims do not differ in any respect relevant to the resolution of this appeal, we address the claims together.") (citing *Zukle v. Regents of Univ. of Cal.,* 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999)).

### 1.  WLAD

First, Stevens Hospital asserts that Ms. Adamski-Thorpe failed to establish that discrimination occurred under the WLAD because she failed to provide evidence that she did not receive a comparable level of treatment from Stevens Hospital. (Mot. at 6-7.) "Treatment received in a hospital generally includes not only medical intervention, but also the opportunity to explain symptoms, ask questions, and understand the treatment being performed including options, if any. A reasonable accommodation to a deaf patient is one that allows a comparable opportunity, reasonable under the circumstances." *Negron v. Snoqualmie Valley Hosp.,* 936 P.2d 55, 59 (Wash. Ct. App. 1997).

1    Stevens Hospital provided testimony that Ms. Adamski and her primary care
2 physician have used a variety of forms of communication over the years, including
3 interpreters (sometimes provided by Ms. Adamski-Thorpe and sometimes by Stevens
4 Hospital), lip reading, and note writing.  (Brunson Decl. (Dkt. # 8) at ¶ 3.)  Ms. Adamski-
5 Thorpe's physician has never felt that she and Ms. Adamski-Thorpe "have failed to
6 communicate effectively."  (*Id.*)  Specifically with regard to the January 19, 2009
7 appointment, Ms. Adamski-Thorpe's physician believes that, despite the lack of an
8 interpreter, she and Ms. Adamski-Thorpe "communicate[d] fully and effectively."  (*Id.* at
9 ¶ 4.)
10    However, according to Ms. Adamski-Thorpe, she writes English only with
11 difficulty, and can understand only about 5% of what people say based on her limited lip-
12 reading skills.  (Adamski-Thorpe Decl. (Dkt. # 22) at 2.)  She also states that she has
13 difficulty fully understanding the notes that hospital personnel write to her, and that the
14 medical staff sometimes do not understand the notes she writes to them.  (*Id.*)  Ordinarily,
15 the question of the reasonableness of an accommodation is an issue of fact for the jury.
16 *Negron,* 936 P.2d at 59.  Ms. Adamski-Thorpe has provided testimony raising an issue of
17 fact concerning the hospital's failure to provide her with a reasonable means of
18 communication.  On the basis of this testimony, a jury could conclude that Stevens
19 Hospital did not treat Ms. Adamski-Thorpe comparably to non-disabled persons.  Thus,
20 the court denies Stevens Hospital's motion for summary judgment on this issue.
21    Next, Stevens Hospital asserts that Ms. Adamski-Thorpe has failed to establish
22 causation under the WLAD or that her disability was a "substantial factor" causing the

alleged discrimination. (Mot. at 7.) In *Fell*, the Washington Supreme Court held that "the proper causation test for disability discrimination in places of public accommodation is that the alleged unfair practice was a substantial factor in producing the alleged discrimination." 911 P.2d at 1330. Stevens Hospital asserts that there is no causation here because its failure to provide an American Sign Language interpreter "was an administrative error, [and] not the result of Plaintiff's hearing-impaired status." (Mot. (Dkt. # 8) at 7.)

Stevens Hospital, however, misapprehends the focus of the WLAD causation test. In *Fell*, the court explained the causation test as follows:

> [T]he . . .test for discrimination requires only that the alleged discrimination result from something the defendant has done, and not from some other cause. This is a reflection of the necessity for establishing proximate cause, and has nothing to do with the subjective intent of the defendant. Regardless of the subjective intent of the defendant, if the discrimination has resulted from some act of the defendant, the plaintiff can state a claim against that defendant.

911 P.2d at 1331, n.30. Thus, contrary to Stevens Hospital's assertion above, whether its failure to provide Ms. Adamski-Thorpe with an interpreter was simply an innocent administrative error is irrelevant because establishing proximate cause "has nothing to do with the subjective intent of the defendant." *Id.*

Here, Ms. Adamski-Thorpe has provided testimony that she asked for an American Sign Language interpreter to be present at various encounters with medical personnel, and that no interpreter was provided. (*See* Adamski-Thorpe Decl. (Dkt. # 22); *see also* Second Adamski-Thorpe Decl. (Dkt. # 30).) She has also testified that lip-reading and writing are not adequate forms of communication for her in the medical

ORDER- 8

context. (Adamski-Thorpe Decl. at 1-4.)  There is evidence that on some of the occasions at issue Stevens Hospital may have tried, albeit unsuccessfully, to obtain an interpreter for Ms. Adamski-Thorpe. (Adamski-Thorpe Decl. at 2.)  Further, there is evidence that the Hospital did provide interpreter services to Ms. Adamski-Thorpe on other occasions. (McManus Decl. at ¶ 4.)   However, the undisputed facts before the court are that such services were not provided on at least three occasions.  (*See generally* Adamski-Thorpe Decl.; Second Adamski-Thorpe Decl.; Brunson Decl. at ¶ 4.)  Further, Ms. Adamski-Thorpe has also testified that on at least one occasion, she was affirmatively told that an interpreter would not be provided.  *See* Adamski-Thorpe Decl. at 5; Second Adamski-Thorpe Decl. at 2.

The Washington Supreme Court has plainly stated that "[r]egardless of the subjective intent of the defendant, if the discrimination has resulted from some act of the defendant, the plaintiff can state a claim against that defendant." *Fell,* 911 P.2d at 1331 n.30.  The Court has also held that "whether a person's disability was a substantial factor in the alleged discrimination, like other matters of proximate causation, is a question of fact." *Id.* at 1330.  Under these standards, the foregoing facts are sufficient to raise a genuine issue of material fact before a jury with regard to causation.  The court therefore denies this portion of Stevens Hospital's motion for summary judgment.

**2.  ADA and RA**

Stevens Hospital asserts that Ms. Adamski-Thorpe's claims under the ADA and RA fail because she has failed to establish intentional discrimination.  (Mot. at 8-9, 11.) Again, Stevens Hospital rests its argument on the assertion that "[t]he failure to provide

1 an interpreter was an administrative error." (Mot. at 8.) To recover monetary damages
2 under the ADA or the RA, a plaintiff must prove intentional discrimination. *Duvall,* 260
3 F.3d at 1138. In *Duvall*, the Ninth Circuit held that to demonstrate intentional
4 discrimination, a plaintiff must establish the defendant's "deliberate indifference." *Id*. In
5 turn, deliberate indifference requires both knowledge that a harm to a federally protected
6 right is substantially likely, and a failure to act upon that likelihood. *Id.* at 1139.

7       The Ninth Circuit teaches that "[w]hen the plaintiff has alerted the public entity to
8 his need for accommodation (or where the need for accommodation is obvious . . .), the
9 public entity is on notice that an accommodation is required, and the plaintiff has
10 satisfied the first element of the deliberate indifference test." *Duvall,* 260 F.3d at 1139.
11 Here, Ms. Adamski-Thorpe has testified that she specifically requested the provision of
12 an American Sign Language interpreter. (*See* Adamski-Thorpe Decl. at 2, 4-5; *see also*
13 Second Adamski-Thorpe Decl. at 2, Ex. A). Thus, she has raised a material issue of fact
14 with regard to the first prong of the Ninth Circuit's test.

15       The second part of the test requires proof that once the entity acquired knowledge
16 of the need for an accommodation, the "entity failed to act." *Duvall,* 260 F.3d at 1139.
17 Nevertheless, "deliberate indifference does not occur where a duty to act may simply
18 have been overlooked, or a complaint may reasonably have been deemed to result from
19 events taking their normal course." *Id.* Stevens Hospital's "administrative error"
20 argument is an apparent attempt to shoehorn its failure to obtain an interpreter for Ms.
21 Adamski-Thorpe into this narrow distinction. The court finds, however, that the shoe
22 simply does not fit. Ms. Adamski-Thorpe has testified that she notified the hospital on

ORDER- 10

more than one occasion of her need for an interpreter, and that it not only simply failed to act, but in at least one instance affirmatively refused to provide the accommodation. (*See generally* Adamski-Thorpe Decl.; *see also* Second Adamski-Thorpe Decl.) Thus, Ms. Adamski-Thorpe has provided sufficient evidence to create a triable issue of fact regarding the hospital's "deliberate indifference" in that the hospital "had notice of [her] need for the accommodation involved and that [it] failed despite repeated requests to take the necessary action." *Duvall,* 260 F.3d at 1140. [3]

Stevens Hospital also asserts that Ms. Adamski-Thorpe's claims under the ADA and RA fail because "there is no evidence that she was in fact denied treatment," and that the steps the hospital took to establish effective communication (such as writing notes and lip-reading) were reasonable. (*See* Mot. at 9, 11.) Under ADA regulations, "a public entity shall take appropriate steps to ensure that communications with . . . members of the public with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a).[4] Contrary to the Stevens Hospital's assertions, Ms. Adamski-Thorpe has

---

[3] The WLAD claim differs from Ms. Adamski-Thorpe's claims under the ADA and RA in that the WLAD does not require a showing of intentional discrimination in suits for money damages. *See Duvall,* 260 F.3d at 1136 n.10 (citing RCW 49.60.030(2) and *Negron,* 936 P. 2d at 60 (holding that plaintiff need not show intentional discrimination to recover money damages for discrimination in a place of public accommodation under the WLAD)). Because the court finds that Ms. Adamski-Thorpe made a sufficient showing of intentional discrimination to survive summary judgment on her ADA and RA claims, she has logically made a sufficient showing under the WLAD as well.

[4] In addition to 28 C.F.R. § 35.160, Ms. Adamski-Thorpe also specifically cites 28 C.F.R. § 35.130 in her complaint in the context of her ADA cause of action. (Compl. at ¶18.) Both of these regulations were promulgated under the ADA. Stevens Hospital has moved for summary judgment with regard to both of these regulations. (Mot. at 11-13.) Consistent with the court's analysis regarding her cause of action under the ADA, the court finds that Ms. Adamski-Thorpe

presented evidence that measures such as lip-reading and note writing are not effective means of communication for her at least in the medical context. (*See generally* Adamski-Thorpe Decl.) Thus, Ms. Adamski-Thorpe has raised a triable issue of fact in this regard, and the court denies this portion of Stevens Hospital's motion as well.

**B.     Ms. Adamski-Thorpe's Motions for Relief from a Deadline and to Amend Her Complaint**

Because the deadline for amending pleadings in this case has passed, Federal Rule Civil Procedure 16(b) controls Ms. Adamski-Thorpe's motions to amend and for relief from the deadline set forth in the case schedule. "Once a court has entered a pretrial scheduling order establishing a timetable for the amendment of pleadings [and that deadline has passed], Federal Rule Civil Procedure 16(b), not Rule 15(a) governs." *Precor, Inc. v. Fitness Quest, Inc.,* No. C05-0993 RSL, 2007 WL 136749, at *1 (W.D. Wash. Jan. 12, 2007) (citing *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607-08 (9th Cir. 1992)).  Thus, the court will grant Ms. Adamski-Thorpe's motion "only for good cause." Fed. R. Civ. P. 16(b)(4).

Rule 16(b)'s "good cause" standard is more demanding than the "freely given" standard of Rule 15(a). In *Mammoth Recreations*, the court explained:

> A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under . . . Rule 15. . . . Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the

---

has raised triable issues of fact with regard to these regulations as well, and thus Stevens Hospital's motion for summary judgment with regard to 28 C.F.R. §§ 35.130 and 35.160 is denied.

ORDER- 12

> party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. . . . Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. . . . Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. . . . If that party was not diligent, the inquiry should end.

975 F.2d at 609 (internal citations and quotations omitted).

The court finds the requirements of Rule 16(b) have been met here. Ms. Adamski-Thorpe's attorney did not realize that there were typographical errors in the original complaint until following his review of Stevens Hospital's motion for summary judgment. (*See* Mot. for Relief (Dkt. # 25) at 2.) Ms. Adamski-Thorpe's attorney notified defense counsel on September 15, 2010 concerning the errors. (*See* Mot. to Amend (Dkt. # 23) at 2.) Ms. Adamski-Thorpe's response to the motion for summary judgment was filed on September 27, 2010 (Resp. (Dkt. # 18)), her motion to amend the complaint was filed on October 7, 2010 (*see* Mot. to Amend), and her motion for relief from the case schedule deadline was filed on October 12, 2010 (*see* Mot. for Relief). Thus, the court finds that Ms. Adamski-Thorpe's attorney acted with the necessary diligence required under Rule 16(b) once the typographical errors were discovered.

The court, however, must also be concerned with undue prejudice to Stevens Hospital if relief from the case schedule deadline or amendment of the complaint is allowed. The errors in Ms. Adamski-Thorpe's complaint are largely simple typographical errors involving dates, and do not affect the substance of her allegations. First, although she alleged that she was in the emergency room on June 7, 2008 (Compl.

ORDER- 13

at ¶ 9), she was actually there on June 8, 2007.  (Mot. to Amend at 2.)  However, prior to filing her complaint, counsel for Ms. Adamski-Thorpe had sent a letter to Defendant describing the June 8, 2007 incident in detail and providing the correct date.  (Second Davis Decl. Ex. A.)

In addition, instead of seeing her doctor on January 18, 2009, as alleged in her complaint (Compl. at ¶ 10), the correct date actually may be January 19, 2009.  (*See* Mot. at 3-4.)  It would be difficult for Stevens Hospital to allege prejudice with regard to this potential amendment because it appears to have sorted this error out on its own.  In fact, Stevens Hospital discusses the events surrounding the January 19, 2009 doctor's appointment at length in its motion for summary judgment.  (*Id.*)

Finally, the allegations contained in the fourth paragraph of Ms. Adamski-Thorpe's complaint state that she made an appointment with her physician, when in actuality she made an appointment to have a mammography.  Under the liberal pleading standards of Federal Rule of Civil Procedure 8, her allegation of a physician's appointment is sufficient to encompass an appointment with a mammography specialist as well, and there is no need to amend this allegation.  Further, in correspondence to Stevens Hospital prior to filing her complaint, Ms. Adamski-Thorpe plainly identified that the purpose of the January 4, 2008 appointment was for a mammography.  (Second Adamski-Thorpe Decl. Ex. A.)

Stevens Hospital asserts that prior to filing its motion for summary judgment it asked Ms. Adamski-Thorpe's counsel over the telephone to provide information concerning certain dates in the complaint, but that counsel never responded.  (Atkins

1  Decl. at ¶ 2.) However, there is no indication in any of the pleadings before the court that
2  Stevens Hospital has conducted any formal discovery. A simple set of interrogatories or
3  requests for production of documents undoubtedly would have been sufficient to clear up
4  the typographical errors here regarding dates.
5      The court notes that the deadline for filing motions to amend the pleadings was on
6  September 16, 2010. (Min. Ord. (Dkt. # 7) at 1.) Ms. Adamski-Thorpe notified counsel
7  for Stevens Hospital of the typographical errors in her complaint on September 15, 2010
8  (Mot. to Amend at 2), and filed her motion to amend on October 7, 2010. Thus, she
9  missed the deadline by only three weeks, and actually notified Stevens Hospital of the
10 errors prior to expiration of the deadline. In addition, the discovery cut-off was on
11 November 15, 2010. (Min. Ord. at 1.) Thus, following Ms. Adamski-Thorpe's counsel's
12 notification of the errors in the complaint on September 15, 2010, Stevens Hospital still
13 had two months in which to conduct further discovery if necessary. The court finds that
14 under these circumstances any prejudice to Stevens Hospital is minimal. The court,
15 therefore, grants Ms. Adamski-Thorpe's motions to amend her complaint and for relief
16 from the deadline concerning amended pleadings in the case schedule.

### C.  CONCLUSION

18      For the foregoing reasons, the court DENIES Stevens Hospital's motion for
19 summary judgment (Dkt. # 8), and GRANTS Ms. Adamski-Thorpe's motion to amend
20 (Dkt. # 23), as well as her motion for relief from deadline (Dkt. # 25). The court further

ORDER- 15

1 | directs Ms. Adamski-Thorpe to file her amended complaint within 7 days of the date of
2 | this order.

Dated this 3rd day of December, 2010.

*[signature]*

JAMES L. ROBART
United States District Judge

ORDER- 16